JIMMIE A. McENTYRE AND BOYDEEN McENTYRE , Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McEntyre v. Commissioner
Docket No. 4997-89
United States Tax Court
T.C. Memo 1990-179; 1990 Tax Ct. Memo LEXIS 192; 59 T.C.M. (CCH) 317; T.C.M. (RIA) 90179; April 5, 1990
*192 Held: Petitioners' farming activity is an activity not engaged in for profit. Accordingly, petitioners are entitled only to those deductions allowable under section 183(b). Held further: Petitioners are not entitled to investment tax credits in the years 1982 through 1986. Jimmie A. McEntyre and Boydeen McEntyre, pro se. Michael T. Breen, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: By timely statutory notice respondent determined deficiencies in petitioners' Federal income tax as follows: Year
Deficiency
1982
$ 1,623
1983
1,728
1984
2,365
1985
2,215
1986
2,291
We must decide whether petitioners' farming activity is an activity not engaged in for profit and whether petitioners are entitled to investment tax credits. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by this reference. At the time of filing their petition *195 in this case and during the years in issue petitioners resided in Marietta, Georgia. Petitioners bought a piece of rural property (the farm) located in Fannon County, Georgia, in December 1980. [1] The property, which petitioners called Spring Mountain Farms, consists of 30 acres of land upon which is located a 40-year old house, a barn, a garage, and a storm cellar. Petitioners took possession of the property in February 1981. The purchase price of the farm was $ 28,000. Petitioners paid $ 6,000 cash down, a $ 4,500 cash payment in March 1981, and financed the balance of the purchase price with a $ 17,500 promissory note secured by a mortgage on the property. The note had an interest rate of 16 percent and a 7-year term. By the time of trial in this case, petitioners had completed payment of all principal and interest due on the note. Both petitioners had full-time jobs in Marietta, Georgia, during the years in issue. Mr. McEntyre was, *196 and still is, employed by Delta Airlines as a lead customer agent. Mrs. McEntyre worked as an account executive for Neighbor Newspapers. Petitioners' home in Marietta was located 93 miles from the farm in Fannon County. Petitioners made weekend trips to, but have never lived on, the property. The house on the farm was occupied briefly in 1982 by petitioners' son and daughter-in-law. However, petitioners have never rented the property and have no intention of doing so in the future. Petitioners bought the farm with the intention of building a new house on the property and retiring there sometime after 1995. Petitioners had some hope of eventually raising a herd of Black Angus cattle on the property, estimating that one acre of cleared land would be needed to support each head of cattle. However, petitioners have never cleared enough land to support more than one or two head of cattle. Petitioners bought one Holstein steer in 1986, but bought no other farm animals between 1981 and 1987. Although petitioners reported receiving $ 150 from the sale of that steer in 1986, their 1986 return was in error. Petitioners bought the steer for $ 150 in 1986 and sold it in 1987, a year *197 not before the Court. During most of their weekend visits to the farm between 1981 and 1983, petitioners worked on improvements and repairs to the house, barn, and fences, and on clearing brush and trees from an area of approximately two acres adjacent to the farm buildings. Sometime during 1982, petitioners contacted a lumber company to inquire about the possibility of selling the timber which they cut down as they cleared the land around the farm buildings. The lumber company representative made no offer to buy timber, stating that his company would be interested only if the entire acreage was clear cut. However, petitioners refused to allow clear cutting of the property. The majority of the 30 acres remains in the naturally wooded state that existed at the time of petitioners' purchase. In 1986, a lumber company representative looking at the timber on the farm told petitioners that several trees had insect infestations. Petitioners have never received estimates of the value of the timber standing on the farm or received offers to buy timber. Since owning the farm, petitioners only once sold wood cut from the land. In 1986, petitioners sold two trailer loads of cut wood, *198 for which they received $ 150 in payment. That amount constitutes the entire amount of income petitioners generated from the farm property during the years in issue. From 1983 through 1986, petitioners continued to work primarily on repairs and improvements to the farmhouse. In addition, petitioners planted approximately 215 watermelon plants and some onion plants in 1983. Petitioners hoped to sell their watermelon for $ 2 each. In 1984, petitioners planted cabbages on the cleared land close to the farmhouse. However, in both years all plants died before maturing. As a source of water for the plants, petitioners relied on rainfall and on water from a hand-dug well which was 30 feet deep. The property received average amounts of rainfall during 1983 and 1984. Petitioners supplemented rainwater by watering the plants using a garden hose running from a small holding tank adjacent to the well. However, the well supplied minimal amounts of water during the summers of 1983 and 1984, and had run completely dry by 1986. Petitioners had a deeper well dug in 1987, but have never used water from that well for other than household purposes. Also growing on the farm were 15 peach trees *199 which began bearing fruit in 1984. Petitioners hoped to sell the peaches for approximately $ 3 per bushel. However, petitioners harvested only one or two bushels of peaches during 1984 and 1985, and those peaches were defective. The peach trees died in 1985, apparently from insect infestation. As a child, Mrs. McEntyre helped her father with the operation of 27 acres of ranch property located in California, upon which cattle were raised and various fruits and vegetables grown. It is unclear whether Mrs. McEntyre's father operated his ranch as a business or as a hobby. Prior to purchase of the farm, the sole extent of Mr. McEntyre's farming experience consisted of occasionally helping his father-in-law tend cattle while on vacation visits to California. Petitioners obtained outside advice with respect to their farming activities from magazines, neighbors, and the local farm extension office. Such advice, however, was limited to information on the timing and depth for planting seeds. Neither petitioner received formal education in raising crops or animals. From 1982 through 1986, petitioners claimed deductions for expenses attributable to their farming activities which totaled *200 $ 41,399. Included in those deductions were claims for depreciation attributable to several items of personal property which petitioners used in their farming activities. That property included a new truck purchased in 1982, two different used tractors purchased between 1981 and 1987, a new Jeep purchased in 1985, a harrow and disc, a wood splitter, and a fertilizer spreader. Petitioners also claimed investment tax credits relating to such depreciation. OPINION Respondent argues that petitioners' farming activities were activities not engaged in for profit and that petitioners are therefore entitled only to those deductions allowable under the provisions of section 183(b). [2] We agree with respondent. Section 183(a) states that no deduction shall be allowed to an individual with respect to an activity if such activity is not engaged in for profit, except as otherwise provided in section 183. Section 183(b) provides that in the case of an activity not *201 engaged in for profit there shall be allowed: (1) deductions which would be allowable without regard to whether or not such activity is engaged in for profit; and, (2) a deduction equal to the amount of the deductions which would be allowable only if the activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1). Sec. 183(b)(1) and (2). For the purposes of section 183, an activity not engaged in for profit is any activity other than one for which deductions are allowable pursuant to section 162 or section 212(1) or (2). Sec. 183(c). Section 162 provides for deductions for expenses attributable to a trade or business. Section 212(1) provides for deductions for expenses attributable to the production or collection of income and section 212(2) provides for deductions for expenses attributable to the management, conservation, or maintenance of property held for the production of income. A taxpayer has the burden of proving that he or she entered into or continued an activity with the actual and honest objective of making a profit. Sec. 1.183-2(a), *202 Income Tax Regs.; Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). While a reasonable expectation of profit need not be proved, a taxpayer's profit objective must be bona fide. Taube v. Commissioner, 88 T.C. 464, 478-479 (1987). This is a factual issue, to be resolved after considering all relevant facts and circumstances. Finoli v. Commissioner, 86 T.C. 697, 722 (1986); Engdahl v. Commissioner, 72 T.C. 659, 666 (1979). However, in determining the taxpayer's profit objective , greater weight is given to objective facts than to the taxpayer's statements of intent. Sec. 1.183-2(a), Income Tax Regs.; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986). Section 1.183-2(b), Income Tax Regs., sets forth a non-exclusive list of nine factors which should be considered in determining whether an activity is engaged in for profit. Those factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended *203 by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's, history in income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and, (9) the elements of personal pleasure or recreation involved in the activity. Not all factors set forth in the regulations are applicable in every case and no one factor is determinative. Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Allen v. Commissioner, 72 T.C. 28, 33-34 (1979). Notwithstanding problems encountered because of minimal water from the well and from insects, petitioners carried on their activities with respect to the farm as though the farm were a hobby rather than in a businesslike manner. Petitioners both worked full-time at other jobs in Marietta, Georgia, a city 93 miles from the farm property, and visited the property only on weekends. Mr. McEntyre had no expertise in running a farm other than occasionally helping his father-in-law *204 tend cattle during vacations. Moreover, other than Mrs. McEntyre's childhood experience on her father's ranch, petitioners had no formal training in raising crops or animals and sought no expert advice other than minimal information relating to the time and depth for planting fruit or vegetable seeds. Throughout all of the years in issue, petitioners received only $ 150 in income, and that income came from one incidental sale of cut wood rather than from a systematic attempt to make a profit through wood-cutting activities. Petitioners refused to consider cutting any significant amount of the timber standing on the property, even though cutting such timber would allow them to pursue their stated goal of raising cattle for income. In addition, petitioners' attempts to raise fruits and vegetables, entirely abandoned in 1985, did not amount to a business-like effort to make a profit. Petitioners admitted at trial that their purpose in buying the farm was as a place for retirement. Moreover, although the farmhouse was occupied during only one of the 5 years in issue and petitioners did not ever intend to rent the house, the majority of petitioners' activities with respect to the *205 property consisted of repairing and improving the farmhouse. We do not find convincing petitioners argument that they intended to raise Black Angus cattle on the property at some point in the future, and that such intention justifies a finding that their activities were engaged in for profit. To date petitioners have not begun raising cattle and they introduced no evidence with regard to when, if ever, they might start. As noted, petitioners refused to clear the timber from the land as needed to support a herd of cattle. Petitioners also testified that the marketability of Black Angus cattle has steadily decreased throughout the time they have owned the farm. Thus, we are led to the conclusion that petitioners are unlikely ever to achieve a profitable cattle-raising operation. We also consider petitioners' action in causing a new well to be dug on the property in 1987, although occurring after the years in issue, relevant with respect to the credibility of petitioners' testimony of an ongoing objective to make a profit. Petitioners argued that they did, and still do, intend to make a profit raising fruits or vegetables but were prevented from doing so because of lack of water. *206 However, although petitioners obtained a reliable source of water in 1987, they have never made any attempt to use the water so obtained for other than household purposes. Petitioners claimed deductions attributable to the expenses of their farming activities totaling $ 41,399 for the 5 years in issue. The majority of those deductions related to expenses of repairing and improving the farmhouse. After taking into account $ 150 of income earned during that time period, the deductions led to claimed farming losses totaling $ 41,249. Such a record of substantial losses claimed over several years and facts revealing that petitioners are unlikely to ever achieve a profitable operation through raising cattle are "important factors bearing on the taxpayer's true intention." Golanty v. Commissioner, 72 T.C. 411 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). For all the foregoing reasons, we conclude that petitioners have not carried their burden of proving that their farming activity was carried on with an actual and honest objective of making a profit. Petitioners are entitled only to those deductions allowable under section 183(b). *207 We must also decide whether petitioners are entitled to investment tax credits claimed for all the years in issue. Petitioners claimed credits relating to depreciation on personal property acquired and used in their alleged farming business. Section 38 provides that a taxpayer may take a credit for qualified investments in certain property. Sec. 38(a). The credit is allowable with respect to acquisition and use of section 38 property. Section 38 property is that property which has a useful life of 3 or more years, and with respect to which depreciation is allowable pursuant to section 167. Sec. 48(a)(1). Depreciation is allowable on property used in a trade or business or held for the production of income. Sec. 167(a). We have determined that petitioners' farming activity was not an activity engaged in for profit pursuant to section 183. That determination is dispositive of the issue of entitlement to investment tax credits in this case. Finoli v. Commissioner, 86 T.C. 697, 744-745 (1986); Pike v. Commissioner, 78 T.C. 822, 841-842 (1982), affd. without opinion 732 F.2d 164 (9th Cir. 1984). Accordingly, petitioners are not *208 entitled to investment tax credits in the years 1982, 1983, 1984, 1985, and 1986. For the foregoing reasons, Decision will be entered for the respondent. Footnotes
1. Throughout this opinion we refer to the property in question as "the farm." This designation is used for convenience only and without intending any inference as to whether or not petitioners engaged in farming activities for profit.↩
2. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩